AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Western District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| MELANIE ARMSTRONG | ) | 23-MJ- 4056 |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 30, 2020 - July 15, 2021___ in the county of ___Monroe___ in the
___Western___ District of ___New York___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 641 | Theft of Federal Money |
| Title 18, United States Code, Section 1343 | Wire Fraud |
| Title 42, United States Code, Section 408(a)(7)(B) | Social Security Fraud |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Michael Nunziato, U.S. Department of Labor, Office of Inspector General

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Nunziato, U.S. DOL-OIG
*Printed name and title*

Affidavit and Complaint submitted electronically by email
in .pdf format.  Oath administered, and contents and signature,
attested to me as true and accurate telephonically pursuant to
Fed. R. Crim.P. 4.1 and 4 (d) on:

Date:  ___March 13, 2023 at 11:30 a.m.___

_____
*Judge's signature*

City and state:  ___Rochester, New York___

Hon. Marian W. Payson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael Nunziato, being duly sworn, depose and say:

1.      I am a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations - Labor Racketeering and Fraud ("DOL OIG, OI-LRF"), currently assigned to the Buffalo Field Office. Prior to joining the Department of Labor, I served as a Special Agent with the United States Department of State, Diplomatic Security Service ("DSS"). I have been employed as a Special Agent for the United States Government for 12 years.  I completed the Diplomatic Security Training Center's Basic Special Agent Course and the Federal Law Enforcement Training Center's Criminal Investigator Training Program where I received specialized training in conducting investigations of federal offenses.  As a part of my official duties, I investigate violations of the United States Code as they relate to, among other areas, benefit fraud, fraud perpetrated against the U.S. Government, and identity theft.

2.      This affidavit is made in support of an application for a criminal complaint charging **Melanie Armstrong** ("ARMSTRONG") with theft of money of the United States, in violation of Title 18, United States Code, Section 641; wire fraud, in violation of Title 18, United States Code, Section 1343; and Social Security Fraud, in violation of 42 U.S.C. 408(a)(7)(B).

3.      The statements contained in this affidavit are based upon my investigation and personal knowledge, my interviews with witnesses, my review of official documents and records, information communicated to me by other law enforcement agents and government officials, and my training and experience as a Special Agent with the Department of State and Department of Labor. Because this affidavit is being submitted for the limited purpose of

securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.

I.   **BACKGROUND**

   A.   **Background on Unemployment Insurance Benefits and the COVID-19 Pandemic**

   4.   At all times relevant to this affidavit, Unemployment Insurance ("UI") was a federal-state program that provided monetary benefits to eligible lawful workers.  Although each state's state workforce agency ("SWA") administers its own respective UI program, all SWAs must do so in accordance with federal laws and regulations.  The federal-state unemployment compensation program was created by the Social Security Act of 1935, and UI benefits are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own.  The UI compensation program is based upon Federal law and is primarily funded through the Federal Unemployment Tax Act, but administered by state employees under state law. Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of the recipient's earnings over a base period.  In New York State, the New York Department of Labor ("NYS DOL") administers the UI program.

   5.   On March 13, 2020, the President declared the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121-5207 (the "Stafford Act").

6.     On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law.  The FFCRA provides additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic.

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020.  It expands states' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs:  Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC").

8.     The first program, PUA, provides for up to 39 weeks of benefits to individuals who are self-employed, seeking part-time employment, or otherwise would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act.  Coverage includes individuals who have exhausted all rights to regular UI or extended benefits under state or federal law or PEUC.  Under the PUA provisions of the CARES Act, a person who is a business owner, self-employed worker, independent contractor, or gig worker can qualify for PUA benefits administered by NYS DOL if he or she previously performed such work in New York and is unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19 related reason.  A PUA claimant must answer various questions to establish his/her eligibility for PUA benefits. The claimant must provide his/her name, Social Security Number ("SSN"), and mailing address. The claimant must also identify a qualifying occupational status and COVID-19 related reason for being out of work.  The eligible timeframe to receive PUA under the CARES Act was from weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020.

9.     The second program, PEUC, provided for up to 13 weeks of benefits to individuals who have exhausted regular UI under state or federal law, have no rights to regular UI under any other state or federal law, are not receiving UI under the UI laws of Canada, and are able to work, available for work, and actively seeking work.  However, states must offer flexibility in meeting the "actively seeking work" requirement if individuals are unable to search for work because of COVID-19, including because of illness, quarantine, or movement restriction.  In New York, the eligible timeframe to receive PEUC benefits under the CARES Act was from April 5, 2020 through December 31, 2020.

10.     Finally, the third program, FPUC, provides individuals who are collecting regular UI, PEUC, PUA, and several other forms of UI with an additional $600 per week.  In New York, the eligible timeframe to receive FPUC was from April 5, 2020 through July 31, 2020.

11.     On August 8, 2020, after FPUC expired, the President signed a Presidential Memorandum authorizing FEMA to use disaster relief funds pursuant to Section 408 Other Needs Assistance of the Stafford Act to provide supplemental payments for lost wages to help ease the financial burden on individuals who were unemployed as a result of COVID-19.  The "Lost Wages Assistance Program" ("LWAP") served as a temporary measure to provide an additional $300 per week via a total of $44 billion in FEMA funds.  The period of assistance for LWAP was August 1, 2020 to December 27, 2020, or termination of the program, whichever was sooner.

12.     On December 27, 2020, the President signed the Consolidated Appropriations Act 2021 into law.  Part of the Consolidated Appropriations Act 2021 is the Continued Assistance for Unemployed Workers Act of 2020 (the "Continued Assistance Act"), which,

4

among other funding measures, extended certain UI benefits initially created by the CARES Act.  For example, the Continued Assistance Act: (1) extended PUA and PEUC benefits to March 14, 2021; and (2) reauthorized and modified FPUC to provide payments of $300 per week for the period between December 26, 2020 and March 14, 2021.  Other Federal extensions have pushed these expiration dates through September 4, 2021.

**B.      Filing for Unemployment Benefits in New York**

13.      At all times relevant to this affidavit, there were two primary methods for filings for unemployment benefits in New York state: online and by telephone.  The application allows New Yorkers to apply just once to receive the correct UI or PUA.

14.      One method for applying for UI in New York is through the NYS DOL website.  Each claimant will need to create a NY.gov online account, which allows the claimant to receive updates on the account, register for direct deposit, and communicate with the NYS DOL.  This requires the claimant to enter an email address, which New York State then uses to communicate with the applicant.  Once the claimant has a NY.gov account, he or she can file a claim through the online portal by submitting their full name, Social Security Number, driver's license or motor vehicle ID number, Alien registration card (if not a U.S. citizen), mailing address (including city and ZIP code), phone number, bank account and routing number, as well as wage and employment information such as New York State Employer Registration Number, Federal Employer Identification Number ("FEIN"), wage details, net annual income, and employer's full name and address.

15.      The other method for filing a claim is by calling the NYS DOL Telephone Claim Center at 1-888-209-8124.  For this method, each claimant still must submit the same

information identified above for the online application, but the submission is made by telephone.

16.     After a claimant applies for UI benefits, if eligible, the first payment will generally be made in two to three weeks from the time the claim is completed and processed. If the claimant does not choose to have benefits direct deposited to a bank account, he or she will receive UI benefit payments on a debit card sent via U.S. mail from a third-party processor and administrator for KeyBank in Illinois.  KeyBank is also the originating bank for New York and other states.

17.     The debit card accrues the UI benefit payments and can be used like other debit cards and can be used to withdraw unemployment benefits from automated teller machines ("ATM") and MasterCard affiliated banks.  The debit card also allows claimants to spend UI directly at retail point-of-sale locations and through online, phone, and mail order purchases. The bank that provides unemployment insurance debit cards in the state of New York, as well as other states, is KeyBank.

18.     KeyBank not only handles the issuance of debit cards, but is also the originator of NYS DOL UI direct deposits to claimant accounts of UI should they select that method instead.  According to Key Bank, prior to paying each claim, whether to a claimant's account or to NYS DOL established debit card account, NYS DOL sends data concerning the claim via the internet from servers in Albany, New York to Key Bank servers in Ohio.

19.     Once a claimant has filed a claim for UI benefits, he or she must also certify every week that he or she continues to be unemployed and meets the eligibility requirements to continue to receive benefits.  This certification process, like the initial application, can be done by telephone via the NYS DOL Telephone Claim Center, or online through the NYS

DOL website.  Each of these weekly certifications triggers NYS DOL to send data concerning the claim via the internet from servers in Albany, New York to Key Bank servers in Ohio.

## II.    INVESTIGATION AND FACTUAL BASIS

### A.    General

Melanie ARMSTRONG NYS UI

20.    According to NYS DOL records, ARMSTRONG, Date of Birth ("DOB") XX/XX/1968[1], applied for NYS DOL UI benefits on 3/26/2020 through the online application portal, with an effective date for payment purposes of 3/9/2020.   In her application, ARMSTRONG certified that she had not worked since 3/17/2020, and she affirmed that she was filing the claim because of circumstances related to COVID-19.  In the application from 3/26/2020, ARMSTRONG listed her address as 225 Bennington Hills Ct, West Henrietta, NY 14586 in the Personal Information Part 2.  In the Employer Information section of the application, ARMSTRONG listed her last employer as being self-employed as a baker, working from her home address of 225 Bennington Hills, Rochester, NY 14586.[2]

21.    During an interview I conducted with ARMSTRONG on 2/2/22 in her apartment at 225 Bennington Hills, Rochester, NY 14586, ARMSTRONG denied having applied for NYS DOL UI benefits.   However, beginning on 4/24/2020 Bancorp Bank ("Bancorp") account 156102442548 began to receive weekly wired disbursements from NYS DOL for UI benefits in the amount of $600 for FPUC in the name ARMSTRONG.  This bank account was in ARMSTRONG's name and Bancorp records list 225 Bennington Hills

---

[1] Full DOBs and SSNs referenced in this complaint are known to agents but are redacted throughout to protect personal identifying information. The DOB and SSN for each individual are consistent unless otherwise noted.
[2] 225 Bennington Hills Ct, West Henrietta, NY 14586 and 225 Bennington Hills, Rochester, NY 14586 both refer to the same location.

Ct, West Henrietta, NY 14586 as the address associated with the account.  Additionally, the Bancorp account ending in 2548 profile list the email dreamdior777@gmail.com and the phone number (585)498-0289 as associated with the account.  ARMSTRONG had previously provided this email address and phone number to the leasing company at Bennington Hills Apartment as valid means of communication.  Additionally, during an interview I conducted with ARMSTRONG on 2/2/22 at her apartment, she verbally provided (585)498-0289 as an accurate contact number.  The amounts received by ARMSTRONG, under her name, then fluctuated during the period she continued to certify for NYS DOL UI and other unemployment benefits, but in total she received $20,100 between 4/24/2020 and 9/8/2021.

22.    In order to continue receiving these disbursements during the stated timeframe, ARMSTRONG had to certify each week to NYS DOL about her current work status, address changes, and other matters.  As part of those weekly certifications, ARMSTRONG had to verify that she had not earned over $504 in any given week.  As part of the weekly certification process, ARMSTRONG was also reminded each week to read the NYS Unemployment Insurance Claimant Handbook which provides details about her responsibilities as a claimant of NYS UI benefits.

23.    New York State ("NYS") Department of Motor Vehicles ("DMV") has Driver's License records for ARMSTRONG reflecting a DOB of XX/XX/1968[3] and address 225 Bennington Hills Ct, West Henrietta, NY 14586.  NYS DMV records show the Class D Driver's License for ARMSTRONG to have been suspended since 9/15/2021 for failure to pay driver responsibility assessment.  NYS DMV records associate Client ID 338763879 with M ARSTRONG as well.

---

[3] This is the same DOB that was used for M. Armstrong's UI benefits, referenced in paragraph 20.

24.     On 2/2/22, I conducted an interview with the Property Manager for Bennington Hills Apartments in Henrietta, NY.  The interview took place in the Leasing Office at 340 Bennington Hills Ct, Henrietta, NY 14586.  The Property Manager confirmed that ARMSTRONG has lived at 225 Bennington Ct since 2019.  ARMSTRONG provided telephone number (585)498-0289, and email address of dreamdior777@gmail as contact information to the leasing office.   Listed on her leasing paperwork, ARMSTRONG acknowledged that her three children, Fantasy, Corion, and Cortez, aged around 16 or 17, also live in the apartment with her.

25.     The Property Manager stated that ARMSTRONG has not made a payment on her lease for some time, owing over $11,000 in back housing payments. When asked by the leasing company, ARMSTRONG claims to not have the ability to pay her housing costs due to COVID-19, and that she has applied for rent relief programs through Monroe County, NY. The Property Manager also verified that only ARMSTRONG and her family had lived in that unit since 2019, and there were no records for Mary THOMAS (THOMAS), DOB XX/XX/1994 (referenced in paragraphs 34-38, below) or D.M., DOB XX/XX/2001 (referenced in paragraphs 45-47, below), in any of the Bennington Hills Apartment records.

**B.     Specific Fraudulent Activity**

Fantasy STOKES NYS UI

26.     According to NYS DOL records, an individual claiming to be Fantasy STOKES ("F STOKES"), DOB XX/XX/1994 applied for NYS UI benefits through the online portal on 8/11/2020.  The application listed the address for F STOKES as 4 Finch St, Rochester, NY 14613.  On a later application update dated 6/17/2021, the application shows a changed address to 225 Bennington Hills Ct, West Henrietta, NY 14586. NYS DOL created

KeyBank debit account 07342453619115097 for the purpose of depositing her NYS UI benefits. The effective date for payment calculation of UI benefits for F STOKES was 6/1/2020, and on 8/14/2020 KeyBank account ending in 5097 received direct deposits for UI benefits totaling $6,620.

27.     As part of the NYS DOL UI application process, the person claiming to be F STOKES submitted multiple documents to help confirm their identity, including digital scans of a Pennsylvania Driver's License, and a New York State Department of Health ("NYSDOH") Certificate of Live Birth. I have examined these documents for authenticity and found indicators of fraud. The digital scan of the Pennsylvania Driver's License submitted as part of F STOKES' UI benefit application is a clear copy of an exemplar used on multiple webpages on the publicly accessible Pennsylvania Department of Transportation's ("PA DOT") website. This exemplar was used when PA DOT updated its Driver's License design in June 2017 on multiple pages and articles. The model in the picture in the exemplar matches the image on the scan sent as part of F STOKES' application, and other features are exact matches as well. The scanned image that was submitted as part of F STOKES' application also had indicators of alteration such as misaligned text strings, the word "sample" printed on the PA DOT exemplar blacked out on the submitted image, and opaque text boxes common in amateur document forgeries. Additionally, PA DOT records show no record for F STOKES with DOB XX/XX/1994. Image 1 shows the scanned image submitted by the person purporting to be F STOKES, and Image 2 is PA DOT exemplar from their website:

10

**IMAGE 1 (redacted by affiant)**



**IMAGE 2**



28.    As part of the NYS UI benefit application, the person purporting to be F

STOKES also submitted a scanned image of a NYSDOH Certificate of Live Birth in the name

11

Fantasy Skyy Princess STOKES, with ARMSTRONG listed as the mother, the DOB as XX/XX/1994, the Medical Record Number of 2420429013, the State File Number of 131-2004-00070977, and Register Number 6306. There are some slight indicators of digital manipulation, specifically around the DOB block on the scanned document. A certified copy of the actual NYSDOH Certificate of Live Birth for Fantasy Skyy Princess STOKES, show matching State File Number and Register Number, and other matching data elements to the digital scans submitted, but the DOB on the certified document is XX/XX/2004.

29.    During the COVID-19 pandemic, NYS DOL utilized a third-party identity verification company called ID.me to help with the large influx of NYS UI benefit applicants. The person purporting to be F STOKES was contacted and had an online video recorded identity session with ID.me on June 20, 2021.  According to ID.me records, the phone number associated with this identity verification session was (585)498-0289; this is the same telephone number previously associated with ARMSTRONG. The individual in the ID.me video recorded session matches the images of ARMSTRONG in NYS DMV records but does not closely resemble the picture of F STOKES as seen on the scanned documents provided to NYS DOL.

30.    As the ID.me session begins, the person on the video confirms that they are representing themselves as F STOKES, confirms the Social Security Number and DOB of F STOKES as provided in the submitted scanned documents, as well as other identifiers. The ID.me interviewer then asks the person representing themselves as F STOKES to present to the camera the physical documents matching those digitally submitted to NYS DOL.  The individual then holds up to the camera a physical version of the PA driver's license previously submitted digitally showing the front.  The front of the physical document shows the same

image of the woman from the PA DOT website exemplars, and when asked to bring it closer to the camera, the identifying information on it appear to match that of the scanned image.

31.     The ID.me interviewer then asks the person representing themselves as F STOKES to display the back of the document. At this point, the person drops the document and appears to need to readjust the camera. She comes back into the frame and shows what is supposed to be the back of the PA Driver's License she had previously been displaying, and the interviewer verifies that this matches what had been submitted as part of F STOKES' NYS DOL UI application. In the video, the digital scan of the back of the comparison document is open as the comparison is taking place. In this comparison image, document number 7H5NCAPT04 is clearly seen, and I recognize the document back to be that of an older NYS DMV Driver's License. NYS DMV records associate document number 7H5NCAPT04 with an expired Driver's License for Client ID 33876387, which is associated with ARMSTRONG. The ID.me interviewer confirms that the document the person purporting to be F STOKES is presenting to him matches the open digital scan already open for comparison.

32.     Following this portion of the online verification interview, the ID.me interviewer asks the individual to present the Social Security Administration ("SSA") Social Security Card that was used as part of the NYS UI benefit application process. The individual holds up what appears to be a SSA Social Security Card showing SSN XXX-XX-8047, and in the name Fantasy Skyy Princess STOKES, with an issue date of 6/12/2019. According to SSA official records, SSN XXX-XX-8047 is assigned to Fantasy Skyy Princess STOKES, DOB XX/XX/2004. SSA records also show that on 6/12/2019, the Custodial Mother of

Fantasy Skyy Princess STOKES applied for and was approved for a reprint of the SSA issued Social Security Card for her daughter, F STOKES.

33.     Additionally, during the interview I conducted with ARMSTRONG on 2/2/22 at her apartment at 225 Bennington Hills Ct, I presented still images (Images 3 and 4) directly captured from the ID.me video to ARMSTRONG.  These images captured from the ID.me video were clear stills of the person claiming to be F STOKES while holding the fabricated PA Driver's License, and while holding the SSA Social Security Card for F STOKES:

**IMAGE 3 (redacted by affiant)**



**IMAGE 4 (redacted by affiant)**



I presented these printed images to ARMSTRONG in reference to her NYS DOL UI claim. ARMSTRONG admitted that it was her in these images.

<u>Mary THOMAS NYS UI</u>

34.    According to NYS DOL records, an individual claiming to be Mary THOMAS ("THOMAS"), DOB XX/XX/1994, SSN XXX-XX-3227, filed for UI benefits on 10/1/2020, with an effective date of 5/4/2020.  The address provided by this individual was 225 Bennington Hills Ct, West Henrietta, NY 14586; the same address provided by ARMSTRONG and in F STOKES' application. As previously explained, the Bennington

Hills Apartment Leasing Office confirmed that they had no record of a Mary THOMAS, DOB XX/XX/1994, having lived at address 225 Bennington Hills Ct, nor in any other address in the complex. Included in the UI application was a scanned image of a NYSDOH Certificate of Live Birth, a scanned image of SSA issued Social Security Card, and a scan of a NYS Enhanced Driver's License.

35.     I have examined these identity documents and found numerous indicators of fraud.  The submitted NYSDOH Certificate of Live Birth listed the infant in the name of Mary THOMAS, and a DOB of XX/XX/1994. The document had unusually opaque text boxes in some of the fields, indicating some form of manipulation, most obvious in the infant name text box and the DOB text box. The mother's last name also looks manipulated, as the font is larger than the first and middle names.  The mother's name is listed as Melanie Melissa THOMAS, being the same first and middle name from F STOKES' official NYSDOH Certificate of Live Birth. The father's name on the submitted Certificate of Live Birth for THOMAS is listed as Japheth Zebulun TOKES.  This first and last name of the father matches the father's names listed on the official NYSDOH Certificate of Live Birth for F STOKES, and the last name TOKES is spelled on the submitted document with a lower case first letter and looks to be a manipulated version of the last name STOKES.

36.     Additionally, the NYSDOH Certificate of Live Birth submitted as part of the application for THOMAS has the Medical Record Number of 2420429013, the State File Number of 131-2004-00070977, and Register Number 6306.  These reference numbers are exact matches to the official Certificate of Live Birth for F STOKES provided by the Department of Public Health, Office of Vital Records for Monroe County, NY.  Relatedly,

the Office of Vital Records for Monroe County, NY did not have any Certificate of Live Birth for Mary THOMAS in the records.

37.    The application for THOMAS also included a scanned image of a Social Security Administration Social Security card in the name Mary THOMAS, with the SSN XXX-XX-3227. Social Security Administration records do not show any assigned SSN for the name Mary THOMAS and DOB XX/XX/1994, and the records show SSN XXX-XX-3227 assigned to a different individual.

38.    This application for THOMAS caused NYS DOL to open a Key Bank account 07342453621748299 for the purpose of depositing NYS UI benefits. Despite the application making it through the initial phases, even triggering the establishment of the deposit account, no funds were deposited before NYS DOL froze the account for fraud.

Corion STOKES

39.    According to NYS DOL records, an individual claiming to be Corion STOKES, DOB XX/XX/1994 applied for NYS UI benefits on 7/29/2020. The address listed on the application was 4 Finch St, Rochester, NY 14613. The effective claim date for this application was 4/6/2020, and from benefit release date 8/18/2020 to 8/2/2021, NYS DOL paid $42,296 UI benefits to the individual claiming to be Corion STOKES. As part of the application, the person claiming to be Corion STOKES submitted a digital scan of an Enhanced NYS Driver's License in the name Corion STOKES, with ID number 786 554 498. The scanned NYS license image also lists Corion STOKES' sex as male. Additionally, a scanned image of a NYSDOH Certificate of Live Birth in the name Corion STOKES, with DOB XX/XX/1994, Register Number 3283, State File Number 131-2005-00041192 was also submitted.

40.     I have examined the scanned document images submitted as part of Corion STOKES' application and found multiple indicators of document fraud. The scanned image of the Enhanced NYS Driver's License has an opaque text box where the ID number is listed where on a legitimate document there is no distinct text box. Additionally, the overall appearance of the image appears to be a digital template rather than a scan of a physical Enhanced NYS Driver's License. Relatedly, NYS DMV has no record of a Corion STOKES with DOB XX/XX/1994, nor of any NYS DL with ID number 786 554 498.

41.     I also examined the scanned image of the NYSDOH Certificate of Live Birth submitted as part of the NYS UI application for Corion STOKES. ARMSTRONG is listed on the scanned image as the mother. The scanned image shows indicators of manipulation, specifically in the infant information box which has an opaque background on some of the birthdate numerals that stand out from the rest of the document. Additionally, the NYSDOH official Certificate of Live Birth for Corion STOKES has the Register Number 3283, the State File Number 131-2005-00041192, and lists ARMSTRONG as the mother, all of which match the scanned image submitted for Corion STOKES to NYS DOL. However, the official NYSDOH Certificate of Live Birth for Corion STOKES has the DOB listed as XX/XX/2005, which does not match the DOB listed on the submitted Certificate of Live Birth – specifically, the month and day are the same, but the year is different. The DOB of XX/XX/2005 from the official NYSDOH Certificate of Live Birth for Corion STOKES would have made him 15 years old at the time of the NYS DOL UI application, which would be too young to receive these benefits.

Cortez STOKES

42.     According to NYS DOL records, an individual claiming to be Cortez STOKES, DOB XX/XX/1994 applied for NYS UI benefits on 7/17/2020. The address listed on the application was 4 Finch St, Rochester, NY 14613. The effective claim date for this application was 3/30/2020, and from benefit release date 8/12/2020 to 8/2/2021, NYS DOL paid $42,711 UI benefits to the individual claiming to be Cortez STOKES. As part of the application, the person claiming to be Cortez STOKES submitted a digital scan of an Enhanced NYS Driver's License in the name Cortez STOKES, with ID number 183 425 118. Additionally, a scanned image of a NYSDOH Certificate of Live Birth in the name Cortez STOKES, with DOB XX/XX/1994, and Medical Record Number 2511631575 was also submitted.

43.     I have examined the scanned document images submitted as part of Cortez STOKES' application and found multiple indicators of document fraud. The scanned image of the Enhanced NYS Driver's License has an opaque text box where the ID number is listed where on a legitimate document there is no distinct text box. Additionally, the overall appearance of the image appears to be a digital template rather than a scan of a physical Enhanced NYS Driver's License. Relatedly, NYS DMV has no record of a Cortez STOKES with DOB XX/XX/1994, nor of any NYS Driver's License with ID number 183 425 118.

44.     I also examined the scanned image of the NYSDOH Certificate of Live Birth submitted as part of the Cortez STOKES' NYS UI application. ARMSTRONG is listed on the scanned image as the mother. The scanned image shows indicators of manipulation, specifically in the infant information box which has an opaque background on some of the birthdate numerals, as well as a size differential that make them stand out from the rest of the

document. The scanned image also has ghost text images in the background of the word VOID likely invalidating this copy of the Certificate of Live Birth. Additionally, NYSDOH official Certificate of Live Birth for Cortez STOKES has the Register Number 3283, the State File Number 131-2005-00041192, and lists ARMSTRONG as the mother, all of which match the scanned image submitted for Cortez STOKES to NYS DOL. However, the official NYSDOH Certificate of Live Birth for Cortez STOKES has the DOB listed as XX/XX/2005, which does not match the DOB listed on the submitted Certificate of Live Birth; the day and month are the same, but the year is different. The DOB of XX/XX/2005 from the official NYSDOH Certificate of Live Birth for Cortez STOKES would have made him 15 years old at the time of the NYS DOL UI application, which would be too young to receive these benefits.

D.M.[4]

45.   According to NYS DOL records, D.M., DOB XX/XX/2001, applied for NYS DOL UI benefits on 10/22/2020, with an effective date of 5/18/2020.  The address provided on the application for D.M. was 225 Bennington Hills Ct, West Henrietta, NY 14586. As part of the application, the person claiming to be D.M. submitted photographs of a NYS DMV Identification Card in the name D.M. and address of 82 Patrician Dr N, Rochester, NY 14623. Additionally, the individual submitted photographs of a SSA Social Security Card in the name D.M., SSN XXX-XX-3838, and of a NYSDOH Certificate of Live Birth in the name D.M., with DOB XX/XX/2001. From benefit release date 11/9/2020 to 7/30/2021, NYS DOL paid out $28,084 to the individual claiming to be D.M..

---

[4] D.M.'s full name is known to agents but is being withheld from this affidavit.

46.    Further investigation showed that someone claiming to be the true D.M. was contacting NYS DOL regarding their inability to claim UI benefits. I interviewed the actual D.M. on 2/18/2022 in her residence at address 82 Patrician Dr N, Rochester, NY 14623. D.M. produced what appeared to be the legitimate physical documents that had been photographed, scanned, and submitted in the fraudulent application. These documents include the NYS DMV Identification Card, NSYSDOH Certificate of Live Birth, and the SSA Social Security Card, all matching the photos of the documents submitted on 10/22/2020.

47.    During the interview, D.M. explained that she attempted to log into the NYS DOL UI system in November 2020 to claim UI benefits, but the system informed her that her SSN was already in use, despite D.M. confirming that she had not applied for NYS UI benefits previously. D.M. stated that she did not give anyone permission to use her identity documents, nor did she give anyone permission to apply for NYS UI benefits in her name. D.M. confirmed that she had never been to 225 Bennington Hills Ct, West Henrietta, NY 14586, and that she had never heard of nor met ARMSTRONG or any of her children. Following this interview, further examination of digital records presents evidence that ARMSTRONG was logging into the NYS DOL UI system and certifying not only as D.M., but other previously mentioned victims.

Internet Protocol (IP) Address Examination

48.    As previously described, beneficiaries of NYS DOL UI benefits must certify weekly that they are still eligible to receive UI benefits. One of the most common ways beneficiaries certify is by logging into the NYS DOL UI system to execute their weekly certifications through the internet, and then answering a standard set of certification

questions. When a beneficiary logs into their account, the NYS DOL system records their internet protocol (IP) address. An IP address is a unique address that identifies a device on the internet or a local network. Generally, an IP address is static for a connection and location, but an individual can log into the NYS DOL UI system from any internet connected location or mobile device.

49.    I examined the IP data from NYS DOL for D.M.'s UI account. There are a number of different IP addresses, but some of the IP addresses recorded for D.M.'s logins were also recorded as login IP addresses for other accounts including ARMSTRONG, F STOKES, Mary THOMAS, Corion STOKES, and Cortez STOKES. When looking at this grouping of individual claimants, IP address 72.230.142.101 stood out from the others as having the most logins and timestamped events in the NYS DOL UI system. This IP address had 551 logins or timestamped events in the NYS DOL UI system between the dates between 1/2/2021 and 7/16/2021.

50.    Of the 551 login or timestamped events in the NYS DOL UI system from IP address 72.230.142.101, 184 of the logins or timestamped events were for the accounts of F STOKES, 119 for ARMSTRONG, 62 for Corion STOKES, 44 for Cortez STOKES, 38 times for D.M., and 2 for Mary THOMAS. Many of these logins and timestamped events were grouped on the same dates and nearly cotemporaneous. The IP address 72.230.142.101 is attributed to telecommunication company Charter Communications. According to their records for the period 11/28/2020 to at least 7/17/2020, the subscriber Service Address and Billing Address for that IP address is 225 Bennington Hills Ct, West Henrietta, NY 14586, and the subscriber contact phone number for the account is (585)498-0298. This is ARMSTRONG's address and phone number. According to Charter Communications

records, the Subscriber Name on this account is Summer HOUSTON. Commercial database checks return a small record of a Summer HOUSTON, DOB XX/XX/1998 being associated with address 225 Bennington Hills Ct, West Henrietta, NY 14586. However, this association between Summer HOUSTON and that address appears to be through a couple businesses that used 225 Bennington Hills Ct, West Henrietta, NY 14586 as their address, and ARMSTRONG was also associated with these businesses. Additionally, NYS DMV has no record of Summer HOUSTON with DOB XX/XX/1998. In the aggregate, this information implies Summer HOUSTON was another alias used by ARMSTRONG.

51.    Excerpts from the IP address data are especially illustrative and have been extracted herein. The first excerpt shows a login from IP address 72.230.142.101 for D.M. on 2/3/2021 at 07:18:52:841. From the same IP address of 72.230.142.101, there is a timestamped log into the NYS DOL UI system for ARMSTRONG's account less than three minutes later at 07:21:48:87. That same day of 2/3/2021 and from the same IP address of 72.230.142.101, there was another timestamped log into the system for ARMSTRONG at 10:26:17:22. Less than four minutes later, from the same IP address there was a timestamped log into the system for the D.M. account, followed less than two minutes later by a log into the Corion STOKES account from the same IP address as well.  This grouping indicates that

| IP ADDRESS | TIME STAMP | SSN | FNAM | LNAM | STREET | CITY | ST |
|---|---|---|---|---|---|---|---|
| 72.230.142.101 | 2021-02-03 07:18:52:841 | 116903838 | D | M | 82 PATRICIAN DRIVE NORTH | ROCHESTER | NY |
| 72.230.142.101 | 2021-02-03 07:21:48:87 | 077603414 | MELANIE | ARMSTRONG | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |
| 72.230.142.101 | 2021-02-03 10:26:17:22 | 077603414 | MELANIE | ARMSTRONG | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |
| 72.230.142.101 | 2021-02-03 10:30:00:598 | 116903838 | D | M | 82 PATRICIAN DRIVE NORTH | ROCHESTER | NY |
| 72.230.142.101 | 2021-02-03 10:31:10:75 | 103943550 | CORION | STOKES | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |

ARMSTRONG was logging into the various NYS DOL UI accounts she was fraudulently maintaining.

52.     Another such grouping occurred from the same IP address of 72.230.142.101 on 6/20/2021.  On this date, there is a timestamped login event for ARMSTRONG at 07:55:07:157.  This is then followed by a timestamped login event for Corion STOKES from that same IP address less than seven minutes later at 08:01:17:991, and then for Cortez STOKES less than three minutes after that at 08:03:24:522, and finally another login event less from the same IP address for F STOKES less than four minutes later. Again, the very short time periods between these logins from the same IP address at ARMSTRONG's confirmed physical address indicates her logging into the various NYS DOL UI accounts to perpetuate her fraudulent scheme.

| IP ADDRESS | TIME STAMP | SSN | FNAM | LNAM | STREET | CITY | ST |
|---|---|---|---|---|---|---|---|
| 72.230.142.101 | 2021-06-20 07:55:07:157 | 077603414 | MELANIE | ARMSTRONG | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |
| 72.230.142.101 | 2021-06-20 08:01:17:991 | 103943550 | CORION | STOKES | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |
| 72.230.142.101 | 2021-06-20 08:03:24:522 | 103943547 | CORTEZ | STOKES | 225 BENNINGTON HILLS | WEST HENRIETTA | NY |
| 72.230.142.101 | 2021-06-20 08:06:46:57 | 071948047 | FANTASY | STOKES | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |
| 72.230.142.101 | 2021-06-20 09:35:21:74 | 071948047 | FANTASY | STOKES | 225 BENNINGTON HILLS CT | WEST HENRIETTA | NY |

53.     In furtherance of her scheme to defraud, ARMSTRONG knowingly provided false information to NYS DOL, which it then sent from its computer servers in Albany, NY to Key Bank servers in Ohio via the internet, beginning with the initial application for NYS DOL UI benefits and continuing with each weekly eligibility certification.  Every weekly

certification constituted another instance in which ARMSTRONG caused fraudulent data to travel interstate between New York and Ohio via the internet.  The last fraudulently induced UI payment to ARMSTRONG, through one of the above accounts, was on or about July 15, 2021.

## III.   CONCLUSION

54.   Based on the foregoing, I respectfully submit that there is probable cause to believe that Melanie ARMSTRONG falsely represented herself to NYS DOL as F STOKES, Mary THOMAS, Corion STOKES, Cortez STOKES, and D.M. and received NYS DOL UI benefits under their identities.  Additionally, once she began to defraud the NYS DOL UI program, ARMSTRONG did not disclose the increase in income from the fraudulent accounts during weekly certifications.  As such, Melanie ARMSTRONG received $131,400.10 in fraudulent funds, and violated Title 18, United States Code, Sections 641 and 1343, and Title 42, United States Code, Section 408(a)(7)(B). I respectfully request that the Court issue the proposed criminal complaint. I further respectfully request that the Court order that the proposed complaint, this affidavit, and the requested arrest warrant remain sealed until such time as Melanie ARMSTRONG is arrested.

Michael Nunziato, Special Agent
U.S. Dept. of Labor, Office of Inspector General

Affidavit submitted electronically by email
in .pdf format. Oath administered, and contents
and signature, attested to me as true and accurate
telephonically pursuant to Fed. R. Crim.P. 4.1 and 4 (d) on:

This __13__ day of March 2023.

HON. MARIAN W. PAYSON
United States Magistrate Judge

25